80 So.2d 662 (1955)
Virgil BRADDOCK, Appellant,
v.
SEABOARD AIR LINE RAILROAD COMPANY, Appellee.
James M. BRADDOCK, Appellant,
v.
SEABOARD AIR LINE RAILROAD COMPANY, Appellee.
Supreme Court of Florida. Special Division B.
May 11, 1955.
Rehearing Denied June 20, 1955.
*663 Nichols, Gaither, Green, Frates & Beckham and Wm. S. Frates, Walter H. Beckham, Jr., and Sam Daniels, Miami, for appellant.
Smathers, Thompson, Maxwell & Dyer, Miami, and Fleming, Jones, Scott & Boots and Charles R. Scott, Jacksonville, for appellee.
PATTERSON, Associate Justice.
On the afternoon of March 25, 1953, James M. Braddock, an eight year old schoolboy, was riding his bicycle home *664 from school in the city of Miami. As he crossed defendants' tracks near his school he was run over by one of defendants' locomotives, suffering the loss of his left leg.
The injured youth and his father, Virgil Braddock, each brought an action against the defendant and in a consolidated trial the jury returned verdicts of $248,439.00 for the son and $6,500.00 for the father. The trial judge set both verdicts aside and ordered new trials because of the refusals of the plaintiffs to enter remittiturs of $123,431.05 and $4,349.80, respectively.
The verdicts were filed on June 26, 1953. After hearing argument on motions for new trial the trial judge entered an order of remittitur in each case on October 7, 1953. The James M. Braddock order read:
"1. That the jury, in its verdict, allowed the exact amount claimed by the plaintiff in the argument. Those figures for pain and suffering, inability to lead a normal life, humiliation and embarrassment and future medical, I find a little high, but the Court is loath to substitute its judgment for that of the jury.
"2. The items for future pain and suffering, humiliation and embarrassment, inability to lead a normal life and loss of earning capacity were apparently in the exact figures claimed in the argument by plaintiff. This shows clearly that the jury did not take into account the Court's instruction as to reducing this to present worth. The statutes do not give a table for the present worth from age eight on, the age of this boy at the time of trial, but the Court secured from an actuary the figures of the present worth of $1.00 per annum. Annuity at age eight is 23.55. Multiplying that by $1,825.00 per year gives the present worth of the sums allowed for pain and suffering, humiliation and embarrassment and inability to lead a normal life in the sum of $42,978.75 as the present worth, $1,825.00 being the total amount divided by fifty-six years. The jury apparently allowed $121,000.00 for loss of earning capacity. While this is problematical and there may be no diminution of earning capacity, and, in fact, it could be increased by change of occupation yet the jury so found. Since the plaintiff should begin to earn at twenty-one years of age, according to the figures of the plaintiff's attorney, his loss should be $2,650.00 per year. Multiplying that by the present worth at age twenty-one of $21,808, we find the figure of $56,790.20. Adding all of these figures together, we reach the sum of $123,431.05. Subtracting the sum of $125,007.95 leaves a difference of $123,431.05.
"If the plaintiff will enter a remittitur in the sum of $123,431.05, a new trial will be denied. Otherwise, a new trial will be granted."
The Virgil Braddock order read:
"The jury in this cause rendered a verdict of $6,500.00. In their verdict for the plaintiff, James M. Braddock, in case No. 28,126, which was tried simultaneously with this cause, the jury allowed for all future medical expenses, and naturally this item should not be allowed twice.
"The difference between the medical expenses to date and the future medical expenses is $4,349.80. If the plaintiff will enter a remittitur in the sum of $4,349.80, a new trial will be denied. Otherwise, a new trial will be granted."
The plaintiff in each case having declined to enter remittitur pursuant to the orders of October 7, the matter was heard on motion of defendant on October 15 and orders granting a new trial in each case were entered. In the James M. Braddock case the order read:
"This cause came on before me upon the Defendants' Motion for Order Granting Motion for New Trial, and it appearing to the court that on the 7th day of October, 1953, the court entered an order stating, `If the Plaintiff will enter a remittitur in the sum of $123,431.05, a new trial will be denied. Otherwise, a new trial will be granted'; and it further appearing to the court that no such remittitur has been entered by the Plaintiff, and the matter having been argued by counsel for the respective *665 parties, and the court being fully advised in the premises, it is thereupon,
"Ordered and Adjudged that a new trial be and it hereby is granted."
In the Virgil Braddock case the order read:
"This cause came on before me upon the Defendants' Motion for Order granting Motion for New Trial, and it appearing to the court that on the 7th day of October, 1953, the court entered an order stating, `If the Plaintiff will enter a remittitur in the sum of $4,349.80, a new trial will be denied. Otherwise, a new trial will be granted'; and it further appearing to the court that no such remittitur has been entered by the Plaintiff, and the matter having been argued by counsel for the respective parties, the court being fully advised in the premises, it is, thereupon,
"Ordered and Adjudged that a new trial be and it hereby is granted."
Each case is here on appeal by the plaintiff below, taken from the order of October 15, under provisions of Secs. 59.04, 59.06 and 59.07(4), Florida Statutes, F.S.A.
It must be noted that the James Braddock case is unique in that the jury awarded damages in the exact amount argued and requested by plaintiff's counsel based upon a detailed itemized breakdown of the various elements of damages demanded, which itemized breakdown was graphically displayed to the jury on a large placard during counsel's summation. And so it was in the Virgil Braddock case, except that the jury returned an even $6,500 rather than $6,570 demanded. Upon this unusual aspect of the verdicts, both counsel, as well as the trial judge, have proceeded under the assumption that the aggregate verdict in each case constitutes an award of each particular item of damage as contended for and calculated by plaintiff's counsel. We think such an assumption as realistic and reasonable and affords a proper basis for an analysis of the verdicts, both in the court below and on appeal here.
At the outset we examine the orders appealed from in the light of Sec. 59.07(4) and the contention of defendant that inasmuch as only the orders of October 15 are appealed from, no errors or defects in the amount of remittiturs fixed by the orders of October 7 may be considered. We are mindful that no ground will be considered on an appeal from an order granting a new trial except that designated in such order by the trial court as the ground upon which the motion was granted. However, reading the two orders in each case together, we think that each complements the other and together constitute the court's action on defendant's motion. The orders of October 7 did not dispose of the motion, and by reference to them in the orders of October 15 the court has specifically designated the precise ground on which the later orders rest, as required by the statute. We are left in no doubt of his grounds thus expressed, and the two orders together fix the limits of inquiry on review.
We first, then, consider the orders in the Virgil Braddock case. Admittedly the father's verdict of $6,500 is composed entirely of medical expenses to the date of the trial plus future medical expenses until the son reaches majority. None of the items is charged to be excessive, nor is it contended that they are improper as elements of damage to be allowed the father. The only ground for the order for remittitur of the future medical expenses was that such expenses to the son's majority had also been allowed in the son's verdict, and constitute an unauthorized double recovery against defendant. Plaintiff contends no such allowance was made to the son; hence the order for remittitur by the father was erroneous. Our study of the calculation of the son's verdict leads us to the same conclusion. For the reason mentioned earlier, the record reveals the precise calculation of future medical expenses of the son. The record reveals without dispute that the son's life expectancy at the date of trial was fifty-six years, and his life expectancy beyond majority was 44 years. *666 Each item of future medical expenses allowed the son was calculated on the basis of 44 years duration, a fact conceded by defendant. One item, bi-weekly visits for limb adjustment, calculated on 56 years' duration, is shown by the record to be an allowance, not for the expense, but for the inconvenience and annoyance involved. No corresponding item appears in the calculation of the father's damages. We must therefore conclude that such future medical expenses as were allowed the son were medical expenses to be incurred after the son's majority. We think the record makes it clearly apparent that the trial court was mistaken in the impression that future medical expenses allowed the father were duplicated in the son's verdict. No other reason having been designated in the order granting new trial, such order is therefore erroneous and must be reversed for entry of an order denying new trial in the Virgil Braddock case.
We next consider the order granting a new trial in the James M. Braddock case. Reading together the orders of October 7 and October 15 it is manifest that the trial court approved the verdict against every ground of the motion for new trial except the failure of the jury to reduce future damages to a present money value. His calculation of the remittitur was intended to rectify that omission. The order itself reveals the basis for the calculation. Plaintiff concedes that the allowance of $121,000 for loss of future earning capacity should properly be reduced to present value but finds in the trial court's calculation an error of $3,181.20 by reason of the court's use of the amount of $2,650 as the future yearly loss rather than a loss of $2,750 per year "according to the figures of the plaintiff's attorney" and actually found by the jury, based on the assumption we have previously mentioned. We agree with plaintiff that the court did so err and that his error was one of mathematical miscalculation clearly revealed in the record. The aggregate loss of future earnings of $121,000, which the trial court accepted, was based upon 50% loss of annual earnings of $5,500 beginning at age twenty-one. It is obvious the court accepted and intended to use those findings rather than to substitute an earning figure of his own. Carrying out the court's own calculation from there, we find the present value of loss of future earning capacity to be $59,972.00 rather than $56,790.20 used in the order. The miscalculation produces the error of $3,181.20.
The Court's calculation of the remittitur is further challenged on the ground that it applies the present worth rule to damages for future pain and suffering, humiliation and embarrassment and inability to lead a normal life. Of the total remittitur, the amount of $59,221.25 represents the reduction of such damages, designated as the "pain and suffering" items, to the present money value of an annuity aggregating, over the life expectance of the plaintiff, the amount awarded in the verdict. The substantial question thus presented is whether the present worth rule, admittedly applicable to future pecuniary loss, is applicable also to future pain, suffering and inconvenience.
There is conflict on the question in other jurisdictions. The cases are collected in annotations in 28 A.L.R. 1177, 77 A.L.R. 1451 and 154 A.L.R. 801, from which it appears that the weight of authority is against the reduction of damages for future pain, suffering and inconveniences. The reasoning against such reduction has been variously expressed, but we think it was aptly stated in Chicago & N.W.R. Co. v. Candler, 8 Cir., 283 F. 881, 884, 28 A.L.R. 1174: "Neither the plaintiff in the case nor any one else in the world has ever established a standard of value for these ills. The only proof ever received to guide the jury in determining the amount of the allowance they should make is, broadly stated, the nature and extent of the injury, its effect and results. They are instructed to allow a reasonable sum as compensation, and determining what is reasonable under the evidence to be guided by their observation, experience and sense of fairness and right. At the best the allowance is an estimated sum determined by the intelligence and conscience of the jury, and we are convinced that a jury would be much more likely to return a just verdict, considering the estimated *667 life as one single period, than if it should attempt to reach a verdict by dividing the life into yearly periods, setting down yearly estimates, and then reducing the estimates to their present value. The arbitrariness and artificiality of such a method is so apparent that to require a jury to apply it would, we think, be an absurdity." On the other hand, those states requiring reduction hold that reasonable compensation cannot mean anything else than present cash value.
The question has not been directly decided in this state. In Florida Dairies Co. v. Rogers, 119 Fla. 451, 161 So. 85, this Court pondered but did not decide the question in relation to statutory damages for wrongful death of a minor child. Subsequently, in Toll v. Waters, 138 Fla. 349, 189 So. 393, 395, objection was made by the defendant to a charge of the Court directing the jury: "`* * * and if, in considering the case, you reach the conclusion that the plaintiff, Lucile S. Waters, is entitled to damages for future pain and suffering, in fixing the amount thereof you would bear in mind and give consideration to the fact that the plaintiff is receiving a present cash consideration for damages not yet sustained'", on the ground that such charge failed to instruct the jury to reduce such future damages to their present value. The charge was approved over the objection raised, the Court being of the view that the language quoted did in effect charge that such damages should be reduced to present value. It is urged by appellees here that Toll v. Waters, supra, finally resolved the question left undecided in Florida Dairies Co. v. Rogers, supra. We do not think so. The Court was not required to consider the question in Toll v. Waters inasmuch as no objection was raised to the charge by the plaintiff, the only party who could be heard to complain on that ground. In the still later case of Renuart Lumber Yards v. Levine, Fla., 49 So.2d 97, this Court had under consideration a verdict of $75,000 on the question whether it was excessive under the facts supporting it. Plaintiff in that case had suffered substantial loss of future earning capacity as well as substantial future pain and suffering, embarrassment, humiliation and inconveniences. Unlike in the case before us now, the Court in that case could only apply its reasonable deduction as to the amount awarded for the various elements aggregating the total verdict. The case is of value to us here only for the reason that, in its analysis of the verdict, the Court reconstructed the award for future loss of earnings by mathematical reduction of future annual earnings at 3% discount, and considered the balance of the verdict to be an unreduced award for future pain and suffering. Discussion of the proper rate of discount was obviously confined to the calculation of loss of future earnings. Thus, although the question before us was not expressly ruled upon, the suggestion is strong that the problem of mathematical reduction to present value does not attend the determination of damages for future pain, suffering and inconveniences. And we think such suggestion is consistent with our considered view of the question presented here, and accords with the weight of authority in this country.
The rule for measuring damages for pain and suffering, past, present and future, has been often stated, and always in substantial conformity with the charge given in Toll v. Waters, supra, which we set out here in full: "`As to pain and suffering the law declares that there is no standard by which to measure it except the enlightened conscience of impartial jurors, the enlightened conscience of each of you. It would be your duty to determine from the evidence what sort of injuries the plaintiff received, if any, their character as producing or not producing pain, the mildness or intensity of the pain; its probable duration, and allow such sum as would fairly compensate her for her pain and suffering, if any, such sum as would receive the approval of the enlightened conscience of each of you, and if, in considering the case, you reach the conclusion that the plaintiff, Lucile S. Waters, is entitled to damages for future pain and suffering, in fixing the amount thereof you would bear in mind and give consideration to the fact that the plaintiff is receiving a present *668 cash consideration for damages not yet sustained.'"
The rule does not seek to instruct the jury in the process by which they shall determine the amount of damages for pain and suffering. Jurors know the nature of pain, embarrassment and inconvenience, and they also know the nature of money. Their problem of equating the two to afford reasonable and just compensation calls for a high order of human judgment, and the law has provided no better yardstick for their guidance than their enlightened conscience. Their problem is not one of mathematical calculation but involves an exercise of their sound judgment of what is fair and right. The problem is often further complicated by the fact that the pain and suffering are yet to be suffered and thus even further removed from exact calculation and certain measurement. But such further uncertainty does not change the problem from one of judgment to one of calculation. It still rests within the enlightened conscience of the jury. We think, therefore, that the aspect of present compensation for future pain is merely one of the subjective elements of the problem, and is not a process of mathematical calculation of present value, such as must be applied to periodic future pecuniary losses. We think, as has been said by others, that to treat future pain and suffering as the loss of an annuity is an absurdity. Viewing the trial court's reduction in the light of our view of the rule, we are persuaded that the reduction is erroneous and should be restored. We note here that the Court considered and expressly rejected the contention that the verdict is excessive. It thus appears that the reduction was not intended as an exercise of the Court's discretion to reduce an excessive verdict, but was instead an intention of the Court to carry out what the Court perceived to be an omission by the jury to perform a mandatory requirement of a mathematical reduction of future worth of prospective pain and suffering to a present value. This we think the Court cannot properly do for the reasons we have already indicated. Since the element of present recompense for future damages is only one subjective element in the determination of these items of damages by the jury, to superimpose the reduction upon the jury's idea of just compensation, which is expressly found not to be excessive, merely in obedience to a rule of damages we find not to be applicable, is patently not an exercise of discretion in granting a new trial, but a clear misapplication of law.
In this connection we are constrained to note, however, that the trial Court was in all likelihood strongly persuaded by the unusual fact in this case that it conclusively appears that the total figure for future pain, suffering and inconveniences was arrived at by an assessment of five dollars per day for the duration of plaintiff's expectancy. The method of counsel's argument to the jury by which the damages are broken down into per diem assessment was neither challenged nor disapproved in the court below, and we are not required to pass upon it here. If it be considered to be deceptive and to produce an excessive verdict, the court, in a proper case, and in the exercise of sound discretion to prevent injustice by excessive verdicts, may so find and order an appropriate remittitur. But we think that neither counsel's summation nor the jury's method of assessment will justify the application of the present worth rule to future pain and suffering.
We think therefore that the remittitur ordered by the trial Court was erroneous in the particulars mentioned and that the errors arise from miscalculation and misapplication of law rather than an exercise of judicial discretion. Under such circumstances we feel obliged to correct the remittitur on this appeal and thus afford the plaintiff his election to enter a correct remittitur or to accept a retrial.
In view of the limited scope of review of orders granting new trials, the question of the excessiveness of the verdicts is neither decided nor precluded by this appeal.
The order granting a new trial in the Virgil Braddock case is reversed and the Circuit Court is hereby directed to enter a final judgment in the sum of $6500 in favor *669 of Virgil Braddock bearing interest from June 20, 1955, the date of the former mandate in this cause. The order granting new trial in the James M. Braddock case is reversed with directions to enter a remittitur in the sum of $61,028.00, and thereupon enter a final judgment in the sum of $187,411 in favor of James M. Braddock, bearing interest from July 6, 1955, the date of the appellant's entry of remittitur herein.
TERRELL, Acting C.J., and SEBRING and HOBSON, JJ., concur.