**UNITED STATES of America,**
**Appellant,**

v.

**HARUE HAYASHI et al., Appellees.**

**No. 16560.**

United States Court of Appeals
Ninth Circuit.
Aug. 16, 1960.

Louis B. Blissard, U. S. Atty., Daral C. Conklin, Asst. U. S. Atty., Honolulu, Hawaii, for appellant.

Eugene H. Beebe, Honolulu, Hawaii, Martin Pence, John T. Ushijima, Hilo, Hawaii, for appellees. Smith, Wild, Beebe & Cades, Honolulu, Hawaii, Pence & Ushijima, Hilo, Hawaii, of counsel.

Before MAGRUDER, POPE and HAMLEY, Circuit Judges.

HAMLEY, Circuit Judge.

In this wrongful death action against the United States growing out of a fatal automobile accident, judgment in the sum of $167,505 was entered for Mrs. Hayashi and her five daughters.[1] The United States appeals on the question of damages only. It is contended specifically that there is no foundation in the evidence for some of the awards; that as to one of the awards the amount should have been reduced to take account of social security payments; and that the amount of certain awards should have been reduced to present value.

Appellees have moved to dismiss the appeal. It is their contention that since there was no motion for a new trial the amount of the awards may not be questioned here. Several decisions of the courts of Hawaii, where this action arose and was tried, are cited in support of the motion to dismiss.

The determination of whether an appellant in the United States Court of Appeals has preserved for review the asserted errors upon which he relies is governed by the Federal Rules of Civil Procedure, 28 U.S.C.A., and federal decisional law. Morgan Electric Co. v. Neill, 9 Cir., 198 F.2d 119, 122. In federal practice any question which has been presented to the trial court for a ruling and not thereafter waived or withdrawn is preserved for review.[2]

All three of the questions pertaining to the damage awards which appellant here seeks to raise were presented during the trial and ruled upon by the trial court. It was therefore not necessary for the appellant to raise those questions again by way of a motion for a new trial in order to preserve them for review in this court. The motion to dismiss the appeal is denied.

As noted above, appellant contends that certain of the awards incorporated in the judgment under review are without foundation in the evidence. The first award so challenged is one which was made to the widow to compensate her for pecuniary loss of support. This award is in the amount of $49,405.

The award in question represents an allowance of $250 a month for the 361 months of decedent's life expectancy reduced to present value on the basis of a formula agreed upon by the parties. Appellant challenges the $250 monthly figure upon which the award is based. It is asserted that there was evidence which would have supported a monthly figure of $307 and other evidence which would have supported a monthly figure of $235. It is pointed out, however, that there was no evidence which suggests the precise figure of $250 as the proper monthly amount. Hence, appellant argues, it was error for the court to fix upon that figure as a basis for this particular lump sum award.

---

1. Plaintiffs' cause of action arose under the Hawaii wrongful death statute, Sess. Laws Hawaii, 1955, c. 205, § 1, p. 184; 2 Rev.L.Hawaii § 246-2 (1955). The consent of the United States to be sued in such an action was given in the Federal Tort Claims Act, 28 U.S.C.A. § 2674.

2. See the Morgan Electric Co. case, supra; 6 Moore's Federal Practice, 2d ed., § 59.-14, page 3888.

■■ It is the function of the fact finder to evaluate all the evidence produced on the question of damages. On a damage item of this kind the selection of an award figure lying within the upper and lower reaches of the evidence represents a proper exercise of that function. In any event appellant is not aggrieved by the action of the trial court in limiting the award to a figure less than it concedes to be supportable under the evidence.

Other awards which according to appellant are without foundation in the evidence are those which were made to the five daughters of decedent for "loss of love, care, affection and guidance" of their father. These awards ranged from $3,600 for the oldest child to $14,600 for the youngest. They were made on the basis of $100 per month computed from the date of their father's death to their respective eighteenth birthdays.

Appellant points out that only two witnesses gave testimony relating to the loss of this kind sustained by the children. Their mother testified that her husband was "kind" to the children and took "good care" of them, but that when they got "naughty" he would "put his foot down." She also testified that the children loved and respected their father, but that they would not "talk back" to him because they were "scared," or because he was "firm." The other such witness was Ruth, the oldest of the five daughters. She testified that her father was "kind," that he took them on "outings," and that she loved her father.

Appellant concedes that this evidence is sufficient to sustain the award as to Ruth, who testified. As to the four daughters who did not testify, however, appellant contends that the testimony was insufficient to support the awards on a like basis which were made to them. Appellant argues: "Certainly, the measure of loss is not what the wife may think of the relationship between her husband and her children—the measure of loss is subjectively dependent upon what each child in turn thinks. And the record is silent in this respect." Thus disposing of the mother's testimony and limiting that of Ruth, appellant contends that there was no showing that would support the awards made to the other four daughters.

On this reasoning a child of one or two years of age could never obtain such an award because he or she would be unable to testify as to the relationship with his or her father.

■ Appellant here acknowledges that the evidence is sufficient to support an award to Ruth based on a loss of $100 a month. There is nothing in the testimony to indicate that Ruth's relationship with her father was any different than that of her four sisters. On the contrary, the inference to be drawn from the testimony of the mother, which has probative value on the subject, is that they were all treated alike. But even in the absence of such an inference the court would be entitled to take judicial notice of the fact that in the normal family the father has equal love and affection for all of his children and provides equal care, guidance, discipline and support.

■ In our view the awards referred to above are amply supported by the evidence.

■ In its reply brief appellant questions for the first time the sufficiency of the evidence to support the award of $72,200 to Mrs. Hayashi for loss of consortium. Mrs. Hayashi suffers from a personal disability which made it necessary for her husband to give her a great deal of special care and attention. In our opinion the evidence was sufficient to support this award.

Appellant argues that the trial court erred in failing to reduce the award to Mrs. Hayashi for pecuniary loss of support by the amount of the social security payments received and to be received by her as a result of her husband's death.

Mrs. Hayashi was awarded $49,405 as her pecuniary loss due to the death of her husband. Since his death and by reason thereof Mrs. Hayashi has received and will continue to receive "mother's insur-

ance benefits" under section 202(g) of the Social Security Act, as amended, 42 U.S.C.A. § 402(g), as indicated in the margin.[3]

The Federal Tort Claims Act, 28 U.S.C.A. § 2674, limits the award for damages to that which is compensatory in nature. Massachusetts Bonding & Ins. Co. v. United States, 352 U.S. 128, 77 S. Ct. 186, 1 L.Ed.2d 189.[4] In applying this principle it has been held in effect that where the injured person is receiving injury-related benefits payable from unfunded general revenues such benefits are to be deducted from any federal tort claims award. The theory is that to the extent of such benefits compensation is already being made from the same unfunded source drawn upon in paying the federal tort claims award.

Thus, where the Veterans Administration has paid the hospital expenses incurred in connection with the injury no award is to be made therefor in a federal tort claims action.[5] Likewise, where disability benefits have been paid under the Veterans Act an award against the government in a Federal Tort Claims Act

case is to be reduced by the amount of such benefits.[6] In each case the benefits are paid from unfunded general tax monies appropriated for the purpose, the same source from which appropriations are made for the purpose of paying federal tort claims awards.

On the other hand, where the injured person has received benefits for the injuries under a National Service Life Insurance policy (United States v. Brooks, supra, 176 F.2d at page 485), or under the Civil Service Retirement Act of 1956, 5 U.S.C.A. § 2251 et seq. (Price v. United States, D.C.E.D.Va, 179 F.Supp. 309), the award made in a federal tort claims case is not to be reduced by the amount of such benefits. These benefits are not paid from unfunded general revenues but from a special fund supplied in part by the beneficiary or a relative upon whom the beneficiary is dependent.

The "mother's insurance benefits" being paid to Mrs. Hayashi under the Social Security Act are not paid from unfunded general revenues. They are paid from the Federal Old-Age and Survivors Insurance Trust Fund created on the books

3. From December 1956 to December 1958 these payments were $42.90 a month. From January 1959 to September 1959, both dates inclusive, the payments to her were $54.50 a month. From October 1959 to June 1961, both dates inclusive, Mrs. Hayashi's monthly payments will be $63.50 a month. There will be progressive increases thereafter, the last in February 1966 when her monthly social security payment will become $87.-00 a month. These payments will terminate after July 1968 and Mrs. Hayashi will then receive no more social security payments until she reaches the age of sixty-two. At that time, if she has not remarried, Mrs. Hayashi will receive $87 a month until her remarriage or death. These latter benefits, however, will be "widow's insurance benefits" payable under § 202(e) of the Social Security Act, 42 U.S.C.A. § 402(e), rather than "mother's insurance benefits" such as she is now receiving. Mrs. Hayashi was thirty-five years of age in 1956 and so will reach sixty-two years of age in 1983, fifteen years after her "mother's insurance benefits" payments terminate.

In addition to these social security

payments for herself Mrs. Hayashi has been receiving and will continue to receive, for the use of her children, "child's benefits" under § 202(d) of the same act, 42 U.S.C.A. § 402(d). Those payments will continue until each of the five children, respectively, becomes eighteen years of age. Since, however, these payments are for the benefit of the children and not Mrs. Hayashi, they have nothing to do with the question of reductions from the award to Mrs. Hayashi for her own pecuniary loss.

4. Likewise, under the law of Hawaii the function of an award made in a wrongful death action is to provide compensation for the loss suffered. Wada v. Associated Oil Co., 27 Haw. 671, 674; Ferreira v. Honolulu R. T. & L. Co., 16 Haw. 615; Kake v. Horton, 2 Haw. 209.

5. Brooks v. United States, 337 U.S. 49, 54, 69 S.Ct. 918, 93 L.Ed. 1200; on remand, United States v. Brooks, 4 Cir., 176 F.2d 482. Contra, United States v. Gray, 10 Cir., 199 F.2d 239, 244.

6. United States v. Gray, supra, at page 244; United States v. Brooks, supra.

of the Treasury of the United States pursuant to section 201(a) of the Social Security Act, 42 U.S.C.A. § 401(a). The money which goes into this fund is provided by a system of excise taxes on employers and income taxes on employees, designed to be actuarially sound and self-supporting.[7] Thus, as in the case of National Service Life Insurance or Civil Service Retirement System benefits, those which Mrs. Hayashi receives are paid from a special fund supplied in part by her husband upon whom she was dependent.

It is true that benefits paid under a National Life Insurance policy are contractual, and benefits paid under the Civil Service Retirement Act of 1956 are vested. The benefits being paid to Mrs. Hayashi, on the other hand, are not contractual. Nor are they vested, at least prior to entitlement.[8]

In our view, however, the principle that injury-related benefits paid from unfunded general revenues are to be deducted and similar benefits paid from a special funded source are not, is in no way affected by the fact that such benefits may or may not be contractual or vested. The objection to double compensation is that the same source is made to pay twice. But if different sources are tapped, neither pays twice and this is true whether or not the benefits are contractual or vested.

We therefore conclude that the trial court did not err in failing to deduct the benefits received and to be received by Mrs. Hayashi as "mother's insurance benefits" under the Social Security Act

from the award made to her for pecuniary loss due to the death of her husband.[9]

Appellant contends that the award made to Mrs. Hayashi for loss of consortium and the award made to each of the five children for loss of the love, care, affection and guidance of their father should have been reduced to present value. This was not done, although the award to Mrs. Hayashi for pecuniary loss was so reduced.

The award to Mrs. Hayashi for loss of consortium is not referred to in the findings of fact. In the conclusions of law and judgment this award is stated to be $72,200, but without explanation therein as to how the court arrived at that sum. In its oral decision, however, the court said: "I arrive at this figure by allowing her $200 per month which, multiplied by Mr. Hayashi's life expectancy of 361 months, results in that figure."

The awards to the five daughters for loss of parental guidance are not referred to in the findings of fact. In the conclusions of law and judgment these awards are stated to be in lump sum amounts ranging from $3,600 for the oldest girl to $14,600 for the youngest. There is no explanation in the conclusions of law or judgment as to how the court arrived at these sums. In its oral decision, however, the court indicated that it made these awards on the basis of $100 a month to each daughter from the time of her father's death to her eighteenth birthday.

It is therefore apparent that with respect to all of the awards now under dis-

7. Section 201(a) of the Social Security Act, 42 U.S.C.A. § 401(a), and the provisions of the Internal Revenue Code referred to therein; United States v. Silk, 331 U.S. 704, 710–711, 67 S.Ct. 1463, 91 L.Ed. 1757; Henry Broderick, Inc. v. Squire, 9 Cir., 163 F.2d 980, 981; 1954 U.S.Code Cong. and Admin.News, vol. 3, page 3733.

8. Flemming v. Nestor, 363 U.S. 603, 80 S.Ct. 1367, 4 L.Ed.2d 1435. See Elmer F. Wollenberg, Vested Rights in Social-Security Benefits, 37 Oregon Law Review (1957–58) 299, 301 et seq.

9. A different conclusion might be indicated if under Hawaii law a damage award against a nongovernment defendant would have to be reduced by the amount of injury-related benefits the plaintiff would receive under the Social Security Act. See United States v. Gaidys, 10 Cir., 194 F.2d 762, 765, where the applicable principle is discussed. Under Hawaii law it is not required that a damage award against a nongovernment defendant be so reduced.

cussion the lump sum amount was arrived at by adding the sum of monthly allowances over an indicated period of time without reduction to take account of present value.

 Since this cause of action arose in Hawaii, the measure of damages to be applied must be determined by the law of that jurisdiction. United States v. Sutro, 9 Cir., 235 F.2d 499.

Prior to the 1955 enactment referred to in footnote 1 there were both statutory and common-law causes of action for wrongful death in Hawaii. Dependents, irrespective of legal relationship, were accorded a statutory cause of action for wrongful death pursuant to Rev.Laws Hawaii, 1945, § 10486. Parties to the relation of husband and wife and parent and child were accorded a common-law cause of action for wrongful death. Gabriel v. Margah, 37 Haw. 571, 574.

The elements of damage applicable to an action by a dependent under section 10486 as it then existed varied according to circumstances, but were limited to just compensation for financial loss. On the other hand, the measure of damages in a common-law cause of action available to husband and wife or parent and child was not so limited. Among the additional elements of damage which could be taken into account in this common-law

action were such items as the deprivation of a wife of the society, comfort and fellowship of her husband, or of the deprivation of parents or children of acts of kindness and attention of their child or parent, as the case may be, and of the association, comfort and presence of the departed child or parent. Gabriel v. Margah, supra, at pages 581–582.

As to these latter elements of damage it has been held by the Supreme Court of Hawaii that they "are difficult of exact estimation and to [concerning] which no standard of value is applicable." Gabriel v. Margah, supra, at page 581.[10] In apparent recognition of this difficulty it has also been held in Hawaii that awards to compensate a widow or child for the loss of care, attention, acts of kindness, and the comfort and solace of the deceased husband's or parent's society need not be reduced to present value. Awards made to the widow or child to compensate for pecuniary damage, however, must be so discounted. Ginoza v. Takai Electric Co., 40 Haw. 691, 705–706.

In 1955 Rev.Laws Hawaii § 246–2 was enacted. This is a new wrongful death action statute which is so complete and all-inclusive that it is probably intended to supplant not only the former statutory action but also the former common-law action.[11] As under the combined former

---

10. Further elucidating this point, the court said in Gabriel:

"In the Kake case [Kake v. Horton, 2 Haw. 209] the measure of damages of the cause of action there adopted included not alone the plaintiff's loss of support but the deprivation of the society, comfort and fellowship of her husband. To none of these elements of damage were standards of pecuniary value applicable nor were they capable of exact estimation except as they might have been directly connected with and a part of the acts of service. The same principle was applied in the Ferreira case [Ferreira v. Honolulu R. T. & L. Co., 16 Haw. 615] by the inclusion in the measure of damages of acts of kindness and attention in connection with the services of the minor child in the family. To acts of kindness and attention no standard of value is applicable nor are they

capable of exact estimation except as they might accompany and be a part of service in the family. Hence it is that while in an action of this kind pecuniary damages are the limit of recovery, they include compensation for losses which are difficult of exact estimation and to which no standard of value may be applied and the damages for which are and necessarily must be left to the sound discretion of the trier of the facts."

11. Codified as Rev.L.Hawaii § 246–2, the material part of this statute reads as follows:

"When the death of a person is caused by the wrongful act, neglect or default of any person or corporation, the deceased's legal representative, or any of the persons hereinafter enumerated, may maintain an action against the person or corporation causing the death or against

statute and common law, a cause of action for wrongful death is now accorded to husband and wife, parent and child, or dependents.

The only substantial change which seems to have been accomplished is that under the present comprehensive statute dependents are no longer restricted to pecuniary damage, but may recover for any item of damage that is available to the named relatives. This difference is without significance in our case, however, since appellees are the widow and children and need not rely on the provision of the statute relating to dependents.

■ The Supreme Court of Hawaii has apparently not had occasion to construe the 1955 enactment. Since, however, the same elements of damage available to husband and wife and parent and child are provided for under the 1955 act as under the former statute and common law, there is no reason to believe that they should not be similarly measured. This means that today, as formerly, it would be necessary to reduce awards for pecuniary loss to present value but not awards for the widow's loss of consortium or the child's loss of parental care and guidance.

Appellant points out, however, that in our case the trial court's awards for loss of consortium and parental guidance and care were actually arrived at by multiplying an indicated monthly figure by a designated number of months. Since this is the technique properly to be used in computing pecuniary loss, appellant argues in effect that the additional step required with regard to pecuniary loss (reduction to present value) must also be taken with regard to the consortium and parental care and guidance awards when computed in like manner.

■ It having been established that damages of the latter kind are not susceptible of exact estimation, we do not believe that what the trial court did should be construed as an attempt to fix an exact estimate of monthly loss therefor. It was only a somewhat mechanical method employed by the trial judge to assist him in arriving at a lump sum figure which would have some reasonable relationship to the damage sustained. No standard of value being available (Gabriel v. Margah, supra), this was entirely appropriate and well within the range of discretion vested in a trial court in fixing such damages. The use of this method did not in our view convert the award into one for pecuniary loss, thereby necessitating a reduction to present value.[12]

Affirmed.

such person or corporation responsible for such death, on behalf of the persons hereinafter enumerated.

"In any such action under this section, such damages may be given as under the circumstances shall be deemed fair and just compensation, with reference to the pecuniary injury and loss of love and affection, including (a) loss of society, companionship, comfort, consortium or protection, (b) loss of marital care, attention, advice or counsel, (c) loss of filial care or attention or (d) loss of parental care, training, guidance or education suffered as a result of the death of the person by the surviving spouse, children, father, mother, and by any person wholly or partly dependent upon the deceased person. The jury or court sitting without jury shall allocate the damages to the persons entitled thereto in its verdict or judgment, and any damage recovered under this section, except for reasonable expenses of last illness and burial, shall not constitute a part of the estate of the deceased."

12. In the only other decided case which has come to our attention dealing with the same problem, although with reference to an award for future pain and suffering, the same conclusion was reached. See Braddock v. Seaboard Air Line R. Co., Fla., 80 So.2d 662, 668.