587 F.2d 1013
 Elmira SMITH, Administratrix of the Estate of Gary Smith,
Deceased, and Elmira Smith in her own right, and Elmira
Smith, as parent and natural guardian of Rhonda Lee Smith
and Gary Joseph Smith, Jr., Appellants,
v.
UNITED STATES of America.
 No. 78-1051.
 United States Court of Appeals,
Third Circuit.
 Argued Sept. 7, 1978.
Decided Nov. 27, 1978.
 
 1
 Louis Samuel Fine, Fine, Staud & Grossman, Philadelphia, Pa., for appellants.
 
 
 2
 Robert M. deLuca, U. S. Atty. by Walter S. Batty, Jr. and Alexander Ewing, Jr., Asst. U. S. Attys., Philadelphia, Pa., for appellee.
 
 
 3
 Before ALDISERT and HIGGINBOTHAM, Circuit Judges, and STERN, District Judge.*
 
 OPINION
 
 4
 STERN, District Judge.
 
 
 5
 The issue presented by this appeal is whether the district court erred in deducting appellant's Social Security Survivor benefits from her recovery under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b) and 2671 Et seq. ("FTCA"). We hold that, where applicable state law recognizes the "collateral source" doctrine, Social Security benefits should not be deducted from a recovery under the FTCA. Accordingly, we reverse.
 
 
 6
 Appellants are the wife and children of Gary Smith who was killed on January 17, 1973 when he stepped in front of a moving train. Prior to his death, decedent, a paranoid schizophrenic, was hospitalized in a Veterans Administration Hospital in Coatesville, Pennsylvania. Appellants brought suit under the FTCA, alleging that the hospital negligently permitted the decedent to leave hospital grounds. Appellant Elmira Smith sought damages on behalf of her husband's estate and in her own right; appellants Rhonda Lee and Gary Joseph Smith sought damages for loss of their father's nurture.
 
 
 7
 Following trial, the district court found that the hospital had been negligent (41a), and awarded damages to appellants based on lost earnings plus funeral expenses, for a total of $25,252.00. Decedent, before his death, had been the recipient of Veteran's Administration benefits. Thus, lost earnings were calculated as consisting of (1) $11,644.00 in past Veteran's benefits; and (2) a sum of $12,108.00, representing the present value of the Veteran's Administration benefits which the decedent would have received had he lived. (55a). In view of decedent's history of mental illness, the court refused to award damages for loss of services and nurture. (51a).
 
 
 8
 By Memorandum and Order dated November 18, 1977, the district court indicated that it had reduced the recovery by the amount of Social Security Survivor benefits which Mrs. Smith was to receive as her husband's survivor. (56a). It is this aspect of the district court's decision which we reverse.
 
 
 9
 Under Pennsylvania law, the "collateral source" doctrine permits a tort victim to recover more than once for the same injury provided these recoveries come from different sources.[1] Thus, for example, an accident victim may recover medical expenses from a tortfeasor even though the victim's own insurance policy covers such costs. The rationale for the doctrine is that "one can justify a double recovery where the original source was supplied by the plaintiff, himself, out of resources that would otherwise have been available to him for other purposes . . ." Feeley v. United States, 337 F.2d 924, 928 (3rd Cir. 1964). See also, Littman v. Bell Tel. Co., 315 Pa. 370, 381, 172 A. 687, 692 (1934) ("Insurance in behalf of the injured person, or any other compensation from a collateral source, cannot be set up by the wrongdoer in mitigation of damages."); Kagarise v. Shover, 218 Pa.Super. 287, 275 A.2d 855 (1971) (error, under collateral source rule, for jury to consider sick pay received by injured school teacher pursuant to state statute in mitigation of tortfeasor's damages).
 
 
 10
 Application of this doctrine to the FTCA was previously considered by this Court in Feeley v. United States, Supra. There it was held that, because both VA hospital benefits and FTCA recoveries come out of general revenues, plaintiff was not entitled to both. That holding, however, was carefully restricted. First, this Court noted "the unique position of the federal government with its many separate branches and agencies, each independent of the other." 337 F.2d at 927. Then, the Court went on to state that:
 
 
 11
 The defendant United States has provided free hospital care for these specific injuries. While it is true that the plaintiff became entitled to the benefits because of his status as a veteran . . . and not because he was the victim of a tort committed by a federal employee, the fact is that the United States has paid for the hospital care here in dispute . . . To allow the plaintiff to recover for this item in his damages would not only result in a double-recovery for him, but also a double-payment out of the general treasury by the United States. We are careful, however, to limit this result to the facts of this case. This decision casts neither approval nor disapproval on such possibly distinguishable situations as where the payment is out of a specially funded source, see United States v. Harue Hayashi, 282 F.2d 599 (9 Cir. 1960), or where the plaintiff has paid a part of all of the premiums necessary to establish the source or fund.
 
 
 12
 Id., at 933-934.
 
 
 13
 United States v. Harue Hayashi, 282 F.2d 599 (9th Cir. 1960), referred to by the Feeley court, dealt with the precise question now before us and held that Social Security Survivor benefits Are "collateral" to a FTCA recovery. In so holding, the court distinguished between those benefits which come from unfunded general revenues of the United States and those which come from "a special fund supplied in part by the beneficiary or a relative upon whom the beneficiary is dependent." 282 F.2d at 603. Survivor benefits, the court held, fell within the latter category because "(t)he money which goes into this fund is provided by a system of excise taxes on employers and income taxes on employees, designed to be actuarially sound and self-supporting." Id., at 604.
 
 
 14
 The Fourth Circuit has similarly held that benefits which are conferred by the United States out of a special fund need not be deducted from an FTCA recovery. See, United States v. Price, 288 F.2d 448 (4th Cir. 1961) (benefits received under the Civil Service Retirement Act, 5 U.S.C. §§ 2551, Et seq. ); United States v. Brooks, 176 F.2d 482 (4th Cir. 1949) (benefits received under a National Service Life Insurance Policy). In addition, two district courts have held that Social Security benefits derive from a source collateral to recoveries under the Federal Tort Claims Act. Cooper v. United States, 313 F.Supp. 1207, 1212 (D.Neb.1970); Gowdy v. United States, 271 F.Supp. 733, 749 (W.D.Mich.1967). More recently, in Steckler v. United States, 549 F.2d 1372 (10th Cir. 1977), the Tenth Circuit, also faced with this question, noted the "dearth of authority on whether Social Security disability payments are to be regarded as income from a collateral source insofar as they represent payments made by the injured person and his employer", Id., at 1379, and concluded that:
 
 
 15
 Logically they are collateral. We do know that the government has supplemented the fund from time to time where this has been necessary. The extent to which the payments under Social Security disability can be traced to the government is questionable. The part contributed by the worker and the employers has the aspects of social insurance and as such is collateral to monies contributed by the government.
 
 
 16
 Id. Remanding on other grounds, the court held that although it "may be impossible" to determine the amount of the government's contribution to the Social Security fund, the onus was on the plaintiff to make "some effort to ascertain the percentage or part contributed by the government . . . so as to permit a determination of the contributions of the employer and employee and their exclusion as collateral sources." Id.
 
 
 17
 We agree with the Ninth Circuit that, where state law recognizes the "collateral source" doctrine, Social Security benefits should not be deducted from a recovery under the Federal Tort Claims Act. FTCA recoveries come out of general revenues; Social Security benefits are funded almost entirely from employee and employer contributions. See, 42 U.S.C. § 401(a) and the provisions of the Internal Revenue Code referred to therein. The government here did not argue that a FTCA recovery must be reduced by that portion of Social Security benefits attributable to the government's contribution out of general revenues. Nevertheless, we are constrained to note our disagreement with the Tenth Circuit in Steckler, Supra, and decline therefore to adopt its approach.[2] We believe that the government's payments are so minimal and so difficult to trace that such an approach would be impracticable.
 
 
 18
 The government contends that failure to deduct Social Security benefits from FTCA recoveries contravenes the FTCA's specific provision that the United States "shall not be liable . . . for punitive damages." 28 U.S.C. § 2674. That question was specifically left open by this Court in Feeley v. United States, supra, at 934. Our research has failed to uncover any subsequent discussion of this question.
 
 
 19
 We believe that the result we reach is consistent with the FTCA's proscription on punitive damages.[3] It was the government's position at oral argument that Whenever a FTCA victim is entitled to compensation from another source even a Private source such sums must be deducted from the FTCA recovery. The government contended that, even if this victim had been privately insured, for example, by a policy paid for entirely by himself, the proceeds from such a policy must be deducted from any recovery against the government or else the government is subject to punitive damages. Merely to state the government's position is to refute it. Were we to adopt the government's position we would deprive a victim of benefits which he has paid for out of his own wages merely because he had the misfortune to have been injured by the United States rather than by a private tortfeasor. Nor do we find significant the fact that the victim here was compelled by law to "purchase" the "insurance". It would be ironic indeed to hold that while individuals must pay Social Security taxes, they cannot rely upon Social Security benefits if the very power that compelled them to purchase those benefits commits a tort against them.
 
 
 20
 Appellants further contend that the district court erred in refusing to award damages for loss of services and nurture.[4] We find ample support in the record for the district court's factual finding that the decedent, because of his mental condition, could not have provided such services. Accordingly, we affirm the district court in this respect.
 
 
 21
 The judgment will be reversed and the proceedings remanded for a recomputation of damages in accordance with this opinion.
 
 
 
 *
 Herbert J. Stern, United States District Judge for the District of New Jersey, sitting by designation
 
 
 [1]
 Under the FTCA, the law of the state in which the tort occurred governs the computation of the amount of recovery, except that punitive damages are not authorized. 28 U.S.C. § 1346(b); Richards v. United States, 369 U.S. 1, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962)
 
 
 [2]
 Cf. Haughton v. Blackships, Inc., 462 F.2d 788, 790 (5th Cir. 1972) (noting, in context of private action, that source may be "collateral" even when the tortfeasor has made some contributions to the fund.)
 
 
 [3]
 D'Ambra v. United States, 481 F.2d 14 (1st Cir.), Cert. denied, 414 U.S. 1075, 94 S.Ct. 592, 38 L.Ed.2d 482 (1973), cited by the government at oral argument, does not compel a different result. There, the First Circuit stated that "Punitive damages . . . is that part of the award that is not compensatory . . .", Id., at 17, in order to explain why application of the Rhode Island wrongful death statute to an FTCA recovery would constitute an assessment of punitive damages against the United States. While that case is clearly inapposite, we note that the statute there measured damages based on the non-economic value of a child to its parents, rather than on actual pecuniary loss. Thus, the court concluded, application of that statute to a FTCA recovery would compel the United States to pay damages which were not compensatory
 
 
 [4]
 Under Pennsylvania law, a tortfeasor may be liable for "the value of services which would, in the ordinary course of events, have been rendered by a deceased husband for his wife and family in and around the home;" and he may be required to compensate "(a) child . . . for the loss of care, training, advice, guidance and education . . ." Mascuilli v. United States, 343 F.Supp. 439, 442 (E.D.Pa.1972), Rev'd on other grounds, 483 F.2d 81 (3rd Cir. 1973)