**Roy L. SIVERSON, Plaintiff-Appellee,**

v.

**UNITED STATES of America,
Defendant-Appellant.**

No. 82–5308.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 11, 1983.

Decided July 12, 1983.

Kenneth Rosengren and Norman Herring, Phoenix, for plaintiff-appellee.

Robert S. Greenspan, Atty., Russell L. Caplan, Atty., U.S. Dept. of Justice, Washington, D.C., for defendant-appellant.

Before ELY, SKOPIL, and FERGUSON, Circuit Judges.

SKOPIL, Circuit Judge:

Siverson sued under the Federal Tort Claims Act (FTCA), alleging medical malpractice by the Veterans Administration Hospital in Tucson. The government conceded liability and a court trial was held on damages. The court awarded $869,000 in special damages, offset by Siverson's VA disability benefits, for an adjusted total of $464,730. The court also awarded $1 million in general compensatory damages for pain and suffering. The government on appeal argues that (1) Medicare payments should have been offset in the judgment, and (2) the court's award of $1 million for pain and suffering was excessive.

## FACTS AND PROCEEDINGS BELOW

Siverson is a World War II veteran who suffers from ankylosing spondylitis, an arthritic spinal condition that caused his early retirement. In 1971, he applied for and received disability benefits from the Social Security Administration. He was also eligible for Medicare benefits. At that time Siverson was capable of and enjoyed many activities of daily living.

On June 25, 1978, Siverson fell and sustained a nondisplaced fracture of the cervical spine between the 6th and 7th vertebral level. X-rays were taken at the VA hospital in Phoenix. On June 29, 1978, he was transferred to the VA hospital in Tucson. The following day, under the direction and supervision of the VA hospital, a "halo"

brace and vest was put on Siverson's head and neck. During this procedure Siverson experienced an "electric shock" through his body and extremities that ultimately developed into a complete paralysis. Later, on July 19, 1978, a surgical laminectomy of the cervical spine was performed and the spine was fused with his head in a forward-looking, upright position. The paralysis continued and Siverson was effectively rendered a quadriplegic.

## ISSUES

1. Does the collateral source rule preclude a set-off for Medicare benefits?
2. Does an award of $1 million for pain and suffering constitute excessive damages?

## I. COLLATERAL SOURCE RULE

Under the FTCA, the United States is liable for "personal injury or death caused by the negligent or wrongful act or omission of any employee of the government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b).

■ The collateral source rule is well-established in Arizona tort law. *Michael v. Cole,* 122 Ariz. 450, 595 P.2d 995 (1979); *Hall v. Olague,* 119 Ariz. 73, 579 P.2d 577 (1978). The rule permits an injured party to recover medical expenses from a tortfeasor, notwithstanding reimbursement of such expenses by the injured party from a third party, if such reimbursement is from a "collateral source" and not from a tortfeasor. The rationale is explained in Comment (b) of the *Restatement (Second) of Torts* § 920A at 514 (1979). "[I]t is the position of the law that a benefit that is directed to the injured party should not be shifted so as to become a windfall for the tortfeasor. If the plaintiff was himself responsible for the benefit, as by maintaining

his own insurance ... the law allows him to keep it for himself."

The government argues that: (1) Ariz. Rev.Stat. § 12–565 requires a reduction in damages by virtue of a collateral source payment, and in effect abolishes the collateral source doctrine in Arizona; (2) Medicare payments are not a "collateral source" because both Medicare payments and funds recovered under the FTCA come from the government; and (3) the award of Medicare expenses constitutes punitive damages, contrary to the express provision of the FTCA. We reject each argument.

### (1) *State Law.*

■ Ariz.Rev.Stat. § 12–565 reads in pertinent part: "Evidence introduced pursuant to this section shall be admissible for the purpose of considering the damages claimed by the plaintiff and shall be accorded such weight as the trier of facts chooses to give it." The statute permits a fact finder in malpractice litigation to be made aware of collateral source benefits to which a plaintiff might be entitled. But, "[i]t should be noted that admission into evidence of plaintiffs' collateral benefits in no way guarantees any reduction in the damages awarded by the trier of fact. The jury may still choose to ignore the collateral benefits in making its decision as to the damages sustained by the plaintiffs." *Eastin v. Broomfield,* 116 Ariz. 576, 584, 570 P.2d 744, 753 (1977). *Accord Allen v. Fisher,* 118 Ariz. 95, 574 P.2d 1314 (App.1978).

The trial court concluded that Ariz.Rev. Stat. § 12–565 was not applicable to an FTCA case. The issue of the statute's applicability need not be addressed because as the district court noted, it has the discretion to ignore any evidence of collateral benefits under the statute.

### (2) *Medicare Payments as a Collateral Source.*

■ In *Overton v. United States,* 619 F.2d 1299 (8th Cir.1980), the Eighth Circuit held that Medicare payments received by a widow had to be deducted from the widow's "swine flu" damage award. *Overton* is dis-

tinguishable, however, because unlike Overton, Siverson showed that he contributed to the Medicare fund through Social Security payments during employment. Moreover, the *Overton* court described Medicare and other social security benefits as a form of social insurance, and "if an FTCA plaintiff can show his benefits would be in the nature of insurance as to him, the collateral source rule would justify a 'double recovery' notwithstanding the connection between the social security fund in question and the government's general revenues." *Id.* at 1308.

Courts distinguish between those benefits that come from unfunded general revenues of the United States (deductible) and those that come from "a special fund supplied *in part* by the beneficiary or a relative upon whom the beneficiary is dependent" (nondeductible). *United States v. Harue Hayashi,* 282 F.2d 599, 603 (9th Cir.1960) (emphasis added) (social security insurance benefits not deductible). In *Harue Hayashi,* we gave examples of unfunded general tax sources (hospital expenses paid by the Veterans Administration, disability benefits paid under the Veterans Act) and special funds (the National Service Life Insurance Policy, the Civil Service Retirement Act). *Id.* at 603.

In *Titchnell v. United States,* 681 F.2d 165 (3d Cir.1982), the Third Circuit summarized the rationale that benefits paid out of a "special fund" need not be deducted. The government was held liable under the FTCA for negligent administration of a swine flu inoculation. The evidence established that plaintiff contributed to Medicare, resulting in the court's conclusion that such payments are from a collateral source under Pennsylvania law. *Id.* at 174. *See also Smith v. United States,* 587 F.2d 1013 (3d Cir.1978) (Social Security Survivor benefits paid a widow and children not deducted from widow's damage award from government under FTCA); *United States v. Price,* 288 F.2d 448 (4th Cir.1961) (Civil Service Retirement benefits not deductible); and *United States v. Brooks,* 176 F.2d 482 (4th Cir.1949) (National Service Life Insurance Policy benefits not deductible from FTCA

damage award). *But see Steckler v. United States,* 549 F.2d 1372 (10th Cir.1977) (burden on claimant to trace contributions to the Social Security fund in order to determine the percentage contributed to the fund by the government and ultimately the amount of Social Security payments that could be considered nondeductible).

Here, the district court held that "the United States of America has not sustained its burden of proof as to any Medicare benefits which the plaintiff may receive, or be entitled to receive, in the future." We agree. The record here shows that the United States failed to sustain that burden as to either its contributions or the amount of benefits that Siverson would be expected to receive in the future. Under these circumstances, the district court did not err in refusing to deduct Medicare expenses from the damage award.

■ *Medicare Expenses as Punitive Damages.*

■ Section 2674 of the FTCA, 28 U.S.C. § 2674, describes the liability of the United States in tort claims cases to be "in the same manner and to the same extent as a private individual under like circumstances, but [the United States] shall not be liable . . . for punitive damages."

The government contends to not deduct Medicare expenses from Siverson's award constitutes punitive damages because the effect is a windfall double recovery for Siverson. The government's rationale would essentially always find recovery from a collateral source to be "punitive" and ignores the collateral source doctrine's purpose of preventing a windfall to the defendant.

## II. EXCESSIVE DAMAGES

■ In *United States v. Cline,* 410 F.2d 1337, 1343 (9th Cir.1969) (action under FTCA by widow and children for drowning), we held that the size of a verdict does not justify its reversal if the amount does not shock the conscience or indicate that the

trial judge was motivated by passion or prejudice.

The record in this case makes clear that although before the 1978 accident Siverson was restricted in his movements due to ankylosing spondylitis, he was still able to enjoy many aspects of a normal life. Now, however, all of Siverson's bodily needs and requirements must be attended to by another person.

The district court's $1 million award in light of the facts of this case cannot be said to shock the conscience or indicate that the trial judge was motivated by passion or prejudice.

AFFIRMED.

ELY, Circuit Judge, dissenting:

As to the appellant's present and tragic physical condition, the District Court found, in part, as follows:

"(a) He has no effective motor function of his legs. He cannot walk.

(b) He has no effective function of the fingers of either hand.

(c) He has some motor function of both arms; however, this is limited by his ankylosing spondylitis.

(d) He has a neurogenic bowel. Feces must be extracted with manual help. Because of the ankylosing spondylitis he cannot sit on a commode and must accomplish defecation, with assistance, in bed, every other day.

(e) He has a neurogenic bladder. Urine is drained through the permanently installed suprapubic tube, into the bladder, and to which a drain tube is attached carrying the urine to a bag. This must be attached and carried at all times."

At the time of the District Court's judgment, Siverson was 62 years of age, and one of the considerations involved in the damage award was presumably that the normal life expectancy of a male person 62 years of age is 17.2 years. In the light of Siverson's present condition, as outlined above, even though I must concede that my own medical knowledge is limited, I simply cannot believe that Siverson can long survive. The court awarded Siverson $464,730, less certain disability benefits, as special damages. These damages were apparently sufficient to cover the cost of medical and nursing attention to be required by Siverson in the future. I have no quarrel with this award, and neither, apparently, does the Government. The Government does, however, vigorously contend that the additional award of $1 million for pain and suffering alone was excessive. I cannot conscientiously avoid the conclusion that the Government's position in this respect is correct. Before the Government's negligence occurred, Siverson was already in such a serious physical condition that he was undergoing extensive pain and suffering. Taking this into account, and in the light of what I have above written, I believe that an award of $500,000 for pain and suffering should have been enough. The afflictions now endured by Siverson, a disabled Veteran, touch my heart, as they would the hearts of everyone, but my considered judgment is that, in this particular case and in one respect, the District Court, along with my Brothers, have been much too liberal in meeting our financial obligation to the public trust.