**Rodney McLEAN, Plaintiff–Appellant,**

v.

**Marvin T. RUNYON, in his official capacity as Postmaster General of the United States, Defendant–Appellee.**

No. 99–35237.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 10, 2000

Filed Aug. 25, 2000

---

Michael R. Dehner, Portland, OR, for plaintiff-appellant.

Herbert C. Sundby, Asst. U.S. Atty., Portland, OR, for defendant-appellee.

Before: NOONAN, GRABER and FISHER, Circuit Judges.

FISHER, Circuit Judge:

Rodney McLean worked for the United States Postal Service ("USPS") for nine-and-a-half years as a Mark–Up Clerk until his disabilities prevented him from performing the duties of that position, even after USPS tried to modify the position to accommodate him. Taking the initiative to find a comparable, vacant position to which

he could be reassigned, McLean identified over 40 positions he claimed would be suitable, but USPS disagreed and refused to reassign him or accommodate him any further. Although McLean wanted to continue working with USPS, he abandoned hope and opted for disability retirement in August 1996 to preserve his medical and life insurance benefits accumulated during 15 years of government service.

McLean filed suit in district court for violation of the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*, and its implementing regulations, particularly 29 C.F.R. § 1614.203(g), seeking front and back pay. After a bifurcated trial, a jury found that USPS unlawfully discriminated against McLean by failing to accommodate his disabilities and awarded him $130,000 in front pay. The district court initially awarded McLean $126,307 in back pay but then reduced that award to $55,411 when it determined the front and back pay awards should be offset by McLean's workers' compensation benefits under the Federal Employees Compensation Act ("FECA").[1] A week later, the court granted USPS's renewed motion for judgment as a matter of law, concluding that McLean had not shown USPS could have reassigned him to a vacant position at the same grade or level as McLean's current position—"same grade or level" being the relevant, specified condition for reassignment of disabled employees under 29 C.F.R. § 1614.203(g). USPS argued, and the district court agreed, that it was bound to offer only a position that met USPS's internal classification of grades or levels, and relied solely on the testimony of its personnel specialist that all of the vacancies McLean identified were not at an equivalent grade or level to his clerk's position.

On appeal, McLean argues "grade or level" means a position with equivalent pay, and thus that a jury could properly find there was at least one vacancy for which he was qualified because it was at his pay level. He also contends the dis-

trict court erred in offsetting his FECA workers' compensation benefits against his front and back pay damages awards. We agree with McLean on the first issue, but disagree on the issue of offset. Accordingly, we reverse the district court's grant of USPS's motion for judgment as a matter of law and remand to the district court to award damages offset by FECA benefits.

## FACTUAL and PROCEDURAL BACKGROUND

The facts in this case are largely undisputed. McLean was employed by USPS as a nonprobationary Mark-up Clerk in the Computerized Forwarding Service unit from February 14, 1987, until August 21, 1996. In late 1994, McLean notified USPS that he was unable to perform the essential functions of the Mark-up Clerk position due to his disability, left work and requested reassignment to a position requiring light physical duty. McLean reported back to work at a Mark-up Clerk position modified to suit his disability on October 16, 1995, but immediately began experiencing discomfort in his neck and shoulder as well as cramping and numbness in his hands and left work that day— which turned out to be his last day of active duty. McLean informed USPS he was unable to perform the duties of the modified Mark-up Clerk position and again requested a position requiring only light physical exertion. USPS denied McLean's request, asserting it had no obligation to accommodate his disability any further.

On March 6, 1996, McLean initiated a complaint with the USPS Equal Employment Office regarding USPS's failure to reassign him to an equivalent, less strenuous position. At the time of McLean's separation from USPS in August 1996, his Mark–Up Clerk position was classified as a "Postal Service" craft, level 4 (PS–4) position and his salary was $34,473. In March 1997, McLean filed suit and, at trial, submitted over 40 vacancy announcements re-

---

1. The district court had not yet decided the amount it would subtract from the front pay

award when it granted USPS's renewed motion for judgment as a matter of law.

garding positions within the executive appointment scheduled ("EAS") classification USPS posted while he was awaiting reassignment. McLean testified that he was qualified for each of these positions.

Of the 40 potential vacancies, eight had salary ranges that included McLean's salary at the time he was separated. One of these was an EAS level 11 position located in Salem, Oregon, roughly 50 miles—a 60-minute commute—from McLean's original workplace.[2] This position had a salary range from $29,630 to $36,390, and specifically called for applications from all career employees working "within the Portland District" where McLean had worked as a Mark-up Clerk. Although McLean had previously requested reassignment to this type of position, USPS did not offer the position to McLean when it became vacant, but instead posted it as available to all employees on May 6, 1996, and not even then did it offer the position to McLean.[3]

## DISCUSSION

### I. USPS's Duty to Reassign McLean to a Vacant Position at the Same or Lower Grade or Level

■ We review *de novo* a district court's grant of a renewed motion for judgment as a matter of law. *See Marcy v. Delta Airlines,* 166 F.3d 1279, 1282 (9th Cir.1999). A judgment as a matter of law is proper if the evidence, construed in the light most favorable to the nonmoving party, permits only a conclusion contrary to the jury's verdict. *See Gilbrook v. City of Westminster,* 177 F.3d 839, 864 (9th Cir. 1999).

■ The nub of this controversy is whether any of the vacancies submitted by McLean was at the "same grade or level" as McLean's PS–4 Mark-up Clerk position within the meaning of 29 C.F.R.

§ 1614.203(g). McLean argues "same grade or level" in § 1614.203(g) means a position with an equivalent pay level. McLean contends the district court therefore erred in reversing the jury's verdict because he presented evidence of at least one EAS–11 vacancy offering the same salary as his current position. Absent evidence of a significant objective difference between the two positions, such as status or benefits, we agree.

The Rehabilitation Act requires that government agencies reasonably accommodate an employee's disability. *See* 29 U.S.C. § 794; *Mustafa v. Clark County Sch. Dist.,* 157 F.3d 1169, 1176 (9th Cir. 1998). The regulations implementing the Rehabilitation Act also provide, "[t]he Federal Government shall become a model employer of individuals with handicaps." 29 C.F.R. § 1614.203(b) (2000). In determining whether a federal agency has violated the Rehabilitation Act, the standards under Title I of the Americans with Disabilities Act ("ADA") apply. *See* 29 U.S.C. §§ 791(g), 794(d); *Newland v. Dalton,* 81 F.3d 904, 906 (9th Cir.1996). Under Title I of the ADA, a reasonable accommodation includes reassignment to a vacant position. 42 U.S.C. § 12111(9)(B). Similarly, the regulations implementing the Rehabilitation Act provide that an agency's duty of reasonable accommodation includes, in certain circumstances, the duty to reassign an employee to a vacant position:

> (g) Reassignment. When a nonprobationary employee becomes unable to perform the essential functions of his or her position even with reasonable accommodation due to a handicap, an agency shall offer to reassign the individual to a funded vacant position located in the same commuting area and serviced by the same appointing authority, and *at the same grade or level,* the

2. Although McLean submitted evidence of eight vacancies offering the same salary as his current position, only the Salem, Oregon, position was within a reasonable distance from his house and current workplace, a prerequisite under 29 C.F.R. § 1614.203(g) ("[A]n agency shall offer to reassign the individual to

a funded vacant position located in the same commuting area.").

3. The USPS personnel office is aware of all vacancies before they are posted as available to all employees.

essential functions of which the individual would be able to perform with reasonable accommodation if necessary unless the agency can demonstrate that the reassignment would impose an undue hardship on the operation of its program. In the absence of a position at the same grade or level, an offer of reassignment to a vacant position at the highest available grade or level below the employee's current grade or level shall be required.

29 C.F.R. § 1614.203(g) (emphasis added).

It is undisputed that McLean was a nonprobationary employee, was disabled and could no longer perform the essential functions of his current job even with reasonable accommodation. Furthermore, as the district court acknowledged, McLean testified that he could perform the essential functions of the vacant EAS positions during the time he requested to be reassigned.

Neither the text of § 1614.203(g), its administrative history, *see* Federal Sector Equal Employment Opportunity, 57 Fed. Reg. 12,634, 12,637–38 (1992), nor any decision of this court defines the meaning of "same grade or level." The Third Circuit, however, has held that "grade or level" means an "equivalent level or position ... of seniority and pay." *Shiring v. Runyon*, 90 F.3d 827, 832 (3d Cir.1996). We find this interpretation persuasive.[4] Not only is pay the ordinary basis for distinctions in grade or level, but in numerous federal statutes and regulations "level" is frequently defined as level of pay and "grade" represents a class of varying jobs with a level of duties and responsibilities intended to reflect a specific pay range. *See, e.g.,* 5 U.S.C. § 5102 (defining "grade" as a "class of positions which, although different with respect to kind or subject-matter of work, are sufficiently equivalent as to ... level of difficulty and responsibility ... *to warrant their inclusion within one range of rates of basic pay* ") (emphasis added); U.S. OFFICE OF PERSONNEL MANAGEMENT, INTRODUCTION TO THE FEDERAL WAGE SYSTEM JOB GRADING SYSTEM 15 (same); *see also* 5 U.S.C. § 6333 (providing that applications to receive donations of leave must include the "grade or pay level" of the proposed leave recipient); *id.* § 8451 (providing that "an employee shall not be considered for disability retirement ... if the employee has declined a reasonable offer of reassignment to a vacant position ... at the same grade (or pay level) as the employee's most recent grade (or pay level) or higher"); 4 C.F.R. § 4.3 (characterizing the "level" classification for General Accounting Office employees as a pay classification and providing for situations where the GAO may reduce an employee's "grade/pay level"). For example, the grading manual of the United States Office of Personnel Management provides that the grade classification of all nonsupervisory employees determines their pay category. INTRODUCTION TO THE FEDERAL WAGE SYSTEM JOB GRADING SYSTEM 14; *see also id.* at 4 ("[T]here shall be equal pay for substantially equal work, and pay distinctions shall be maintained in keeping with work.").[5]

▇▇▇ The question whether a vacant position is at the "same grade or level" as

---

4. We need not address the issue of seniority. USPS did not argue that the vacant positions classified as EAS–11 and above were positions of greater status or seniority than McLean's PS–4 Mark-up Clerk position.

5. Any uncertainty over the meaning of "same grade or level" could in the future be avoided if the EEOC defined this term in the regulation. In this regard, our interpretation of "at the same grade or level" is consistent with the EEOC's proposed amendment to 29 C.F.R. § 1614.203(g) stating that "reasonable ac-

commodation may include reassignment to a vacant position." Federal Sector Equal Employment Opportunity, 65 Fed.Reg. 11,019, 11,023 (to be codified at 29 C.F.R. § 1614.203(b)(2)) (proposed Mar. 1, 2000). The EEOC has stated that, under an employer's reassignment obligation, the employer "should search for vacant positions that are equivalent to the current position in terms of pay, status, and other relevant factors (e.g., geographical location or benefits)." *Id.* at 11,022.

---

an employee's current position must turn on objective differences between the two positions, such as pay or benefits, not merely on an employer's bare assertion that the positions are not "equivalent." Otherwise, the regulation would allow employers covered by the Rehabilitation Act to avoid their reassignment obligation under § 1614.203(g) by merely asserting an employee's current position is at a different "grade or level" regardless of the similarities between the current position and a vacant one. In addition, such an interpretation would provide employers with an incentive to reduce their reassignment obligation by arbitrarily creating as many grade and level classifications as possible and denying that any one classification is the equivalent "grade or level" as another. For these reasons, we conclude that absent a significant difference in relevant factors such as status or benefits, a "vacant position ... at the same grade or level" in 29 C.F.R. § 1614.203(g) includes a vacant position with an equivalent level of pay as an employee's current position.

This case presents a clear example of the peril of relying on an employer's mere assertion that an employee's current position and a vacant position are not equivalent. The district court adopted the assertion of USPS's personnel specialist that McLean's PS–4 classification was equivalent to an EAS level 10 position. The personnel specialist did not, however, identify any difference in pay or status between McLean's current position and the EAS level 11 position and, indeed, subsequently acknowledged that the only difference between levels (e.g., 10 vs. 11) is salary. Her testimony supports McLean's argument that the Salem, Oregon, EAS–11 position was at the same "grade or level" as his current position because McLean established that it offered the same salary. USPS did not offer any other evidence that McLean's current position was equivalent only to an EAS–10 position. Accord-

ingly, we hold that the jury was entitled to find the EAS–11 position was at the same grade or level as McLean's current position under 29 C.F.R. § 1614.203(g). We therefore reverse the district court's decision and direct it to reinstate the jury's verdict.

## II. Offset of Front and Back Pay Damages for FECA Workers' Compensation Benefits

We next turn to the district court's decision to offset McLean's front and back pay damages awards by the amount of his FECA workers' compensation benefits.[6] *See Los Angeles Mem'l Coliseum Comm'n v. National Football League*, 791 F.2d 1356, 1359–60 (9th Cir. 1986) ("'An appeal from the final judgment draws in question all earlier non-final orders.'") (quoting *Munoz v. Small Bus. Admin.*, 644 F.2d 1361, 1364 (9th Cir. 1981)); *see also Sheet Metal Workers' Int'l Ass'n Local Union No. 359 v. Madison Indust., Inc.*, 84 F.3d 1186, 1193 n. 7 (9th Cir.1993) (same). We review a district court's award of damages under the Rehabilitation Act for abuse of discretion. *See* 29 U.S.C. § 794a (incorporating remedial provisions of Title VII); *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 422, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975) (Title VII damages award); *Odima v. Westin Tucson Hotel*, 53 F.3d 1484, 1495 (9th Cir.1995).

A district court's damages award under the Rehabilitation Act, which has incorporated the remedial provisions for Title VII, *see* 29 U.S.C. § 794a, must comport with Title VII's "central statutory purposes of eradicating discrimination throughout the economy and making persons whole for injuries suffered through past discrimination." *Albemarle*, 422 U.S. at 421, 95 S.Ct. 2362. McLean invokes the collateral source rule to argue that his FECA benefits should not offset his damages award. Under the collateral source rule, "benefits received by the plaintiff

---

**6.** The parties agreed, and the district court requested, that if this court reversed the district court's judgment as a matter of law, the interests of judicial economy would best be served were this court to address the legal issue of offset for workers' compensation benefits.

from a source collateral to the defendant may not be used to reduce that defendant's liability for damages." 1 Dan B. Dobbs, Law Of Remedies § 3.8(1) at 372–73 (2d ed.1993); *accord Kauffman v. Sidereal Corp.*, 695 F.2d 343, 346–47 (9th Cir.1982). The primary justifications for the collateral source rule are that the defendant should not get a windfall for collateral benefits received by the plaintiff and that the defendant should not profit from benefits that the plaintiff has paid for himself.[7] *See, e.g., Siverson v. United States*, 710 F.2d 557, 560 (9th Cir.1983); *Gypsum Carrier, Inc. v. Handelsman*, 307 F.2d 525, 534 (9th Cir.1962) ("As between the injured person and the tortfeasor, the former's claim is the better.... The tortfeasor bears only the single burden for his wrong. That burden is imposed by society ... to deter" wrongful conduct); *see generally* 2 Dobbs § 8.6(3) at 493–98.

We conclude the collateral source rule does not apply in this case. Workers' compensation benefits under FECA are ultimately paid entirely by USPS and thus are not derived from a collateral source. *See* 1 Dobbs, Law Of Remedies § 3.8(2) (concluding that the collateral source rule does not apply when the benefit is derived from the defendant himself); *cf. Olivas v. United States*, 506 F.2d 1158, 1163–64 (9th Cir.1974) (holding, under Arizona law, that collateral source rule does not preclude defendant from obtaining offset of damages for premiums it paid for workers' compensation benefits received by the plaintiff). FECA workers' compensation benefits are paid from an Employees' Compensation Fund (ECF), which is ultimately reimbursed entirely by the appropriate federal agency or instrumentality for each payment made for an injury to one of its employees. *See* 5 U.S.C. § 8147. There is no windfall to USPS if McLean's FECA benefits are offset from his damages award because USPS pays both the damages award and the workers' compensation benefits.[8]

The district court's damages award does not frustrate the purposes behind Title VII. First, the award makes McLean

7. Our precedent is not absolutely clear as to whether a district court has discretion to deduct collateral benefits from a damages award under Title VII. *Compare Kauffman v. Sidereal*, 695 F.2d 343, 347 (9th Cir.1982) ("We ... hold that unemployment benefits received by a successful plaintiff in an employment discrimination action are not offsets against a [Title VII] back pay award."), *with Naton v. Bank of California*, 649 F.2d 691, 700 (9th Cir.1981) (holding that district court had discretion to deduct collateral benefits from an ADEA back pay award); *see also Lussier v. Runyon*, 50 F.3d 1103, 1109 (1st Cir.1995) (concluding that *Kauffman* and *Naton* reflect "an internal division" in this circuit on the issue whether district courts have discretion to deduct collateral benefits from damages awards under anti-discrimination statutes). Other circuits are split on the issue whether district courts have discretion to deduct collateral benefits from damages awards under Title VII, the ADEA and the ADA. *Compare Dailey v. Societe Generale*, 108 F.3d 451, 460 (2d Cir.1997) ("[T]he decision whether or not to deduct unemployment benefits from a Title VII back pay award rests in the sound discretion of the district court."), *Lussier v. Runyon*, 50 F.3d at 1108–09 (same for front pay award under the Rehabilitation Act and Title VII), *EEOC v. Grady*, 857 F.2d 383, 389

(7th Cir.1988) (ADEA back pay award), *Johnson v. Chapel Hill Indep. Sch. Dist.*, 853 F.2d 375, 382 (5th Cir.1988) (Title VII and ADEA back and front pay awards), *and EEOC v. Wyoming Retirement Sys.*, 771 F.2d 1425, 1431 (10th Cir.1985) (ADEA back pay award), *with Hamlin v. Charter Township of Flint*, 165 F.3d 426, 433–34 (6th Cir.1999) (holding that collateral source benefits may not be deducted from damages awards under Americans with Disabilities Act), *Gaworski v. ITT Commercial Fin. Corp.*, 17 F.3d 1104, 1114 (8th Cir.1994) (holding that "unemployment benefits should not be deducted from back pay award under the ADEA"), *Craig v. Y & Y Snacks, Inc.*, 721 F.2d 77, 82–84 (3d Cir.1983) (Title VII back pay award), *Brown v. A.J. Gerrard Mfg. Co.*, 715 F.2d 1549, 1550–51 (11th Cir.1983) (Title VII back pay award), *and EEOC v. Ford Motor Co.*, 688 F.2d 951, 952 (4th Cir.1982) (Title VII back pay award). We need not reach this issue, nor address whatever tension may exist between *Naton* and *Kauffman*, because in this case we conclude the collateral source rule does not apply.

8. McLean's FECA benefits do not qualify as collateral source benefits even under this court's rule that benefits received from a special government fund supplied in part by con-

whole because the damages awarded, together with the FECA workers' compensation benefits, give McLean a full recovery for lost wages. Second, the reduced damages award serves the purpose of eradicating discrimination, although less so than an award not offset by workers' compensation benefits, by imposing a substantial burden upon USPS for breaching its duty of reasonable accommodation.[9] *See Albemarle,* 422 U.S. at 421, 95 S.Ct. 2362. Accordingly, we hold the district court did not abuse its discretion in deducting McLean's FECA workers' compensation benefits from his damages award.

## CONCLUSION

We hold the district court erred in overturning the jury's verdict in favor of McLean, because he presented sufficient evidence to lead a reasonable jury to conclude USPS could have reassigned him to a vacant position at the same grade or level as his current position. We further hold the district court did not abuse its discretion by reducing McLean's damages for lost back and front pay by the amount of his FECA workers' compensation benefits. We therefore reverse and remand to the district court with directions to reinstate the jury's verdict and to award damages in accordance with this opinion.

REVERSED and REMANDED.

tributions from the beneficiary—as opposed to benefits payable from unfunded general revenues—do not offset damages paid from a government agency or other government source. *See Siverson v. United States,* 710 F.2d 557, 559–60 (9th Cir.1983) (holding that medicare benefits could not offset damages paid by Veterans Administration under Federal Torts Claims Act ("FTCA") because plaintiff contributed in part to the Medicare fund through Social Security payments); *United States v. Hayashi,* 282 F.2d 599, 603 (9th Cir.1960) (holding that "mother's insurance benefits" paid from Federal Old–Age and Survivors Insurance Trust Fund could not offset damages awarded for wrongful death under FTCA). Unlike the plaintiff in *Siverson* and

the husband of the plaintiff in *Hayashi,* McLean did not contribute any money to the fund at issue. *See* 8 U.S.C. § 8147; *Hayashi,* 282 F.2d at 603; *see also Phillips v. Western Co. of N. Am.,* 953 F.2d 923, 931 ("[T]he courts will apply the special defendant-as-tortfeasor exception to the collateral source rule only when it is clear that the government paid for the entire benefit.").

9. We are not here faced with an offset of collateral benefits that reduces the damages award to such a negligible amount that it would frustrate Title VII's purpose of deterring future discrimination. McLean's FECA benefits constituted only two-thirds of his monthly pay. *See* 8 U.S.C. § 8105.