Partial Concurrence and Partial Dissent by Judge CALLAHAN
OPINION
O’SCANNLAIN, Circuit Judge:
We are asked to decide whether the attorney for a student covered under the Individuals with Disabilities Education Act is entitled to fees for legal work performed after the student’s graduation from public school.
I
This case originates from a dispute over which California government entity would be responsible for funding the education of K.G., an emotionally disturbed minor from California. Following K.G.’s release from juvenile hall in 2007, the California Department of Education (“the State”), the Orange County Department of Education (“the County”), and the Irvine Unified School District (“the School District”) all agreed that K.G. was entitled to a “free appropriate public education” (“FAPE”) under the Individuals with Disabilities Education Act (“IDEA”), 20 U.S.C. § 1400(d)(1)(A), but each entity disclaimed responsibility for funding such FAPE. Eventually, the County agreed to fund K.G.’s FAPE, temporarily, until the financially responsible agency could be determined as a matter of law.
A
' In November 2009, an administrative law judge (“ALJ”) within California’s Office of Administrative Hearings ruled that the School District was the agency responsible for the FAPE under California law. The District filed a civil action in federal district court challenging the ALJ’s deci *1090 sion and naming the State, the County, and K.G. as co-defendants in February of 2010, two months before KG.’s graduation in April. Proceedings in the district court continued for seven months after KG.’s graduation and culminated in a decision holding the State responsible for K.G.’s FAPE in November of 2010. The State appealed to this court, and we determined that, as a matter of California law, the School District was responsible for providing KG.’s' FAPE and not the State; we remanded the case for proceedings consistent with our decision. See Irvine Unified Sch. Dist. v. Cal., 506 Fed.Appx. 548, 550 (9th Cir. 2013) (unpublished).
On remand and before the entry of judgment in district court, K.G. moved for statutory attorneys’ fees under IDEA. 20 U.S.C. § 1415(i)(3)(B)(i)(I). K.G., still with the original attorney, requested $232,625.00 in fees and $1,286.85 in costs. The district court denied the request for attorneys’ fees entirely, holding that K.G. was not a “prevailing party” under IDEA because KG.’s “victory” — the conclusive determination as to which agency would fund the FAPE — was merely “technical or de minimis.” During the course of litigation, K.G. had maintained that the State was responsible for the FAPE rather than the School District, an argument the district court accepted. The district court therefore reasoned that, “given the inherently equitable nature of deciding on attorney fee awards, it seems inappropriate for the District to pay fees accumulated while K.G. was arguing the District’s own position.” K.G. failed to file a timely appeal.
B
With the assistance of a new attorney, K.G. sought relief from the district court’s denial of fees under Federal Rule of Civil Procedure 60(b) in February 2014. K.G. argued that the original attorney had “experienced several traumas, including the death of her mother and father-in-law as well as her own life-threatening condition, which triggered an unusually severe bout of depression and anxiety.” According to K.G., the denial of substantial attorneys’ fees was the final blow, deepening the attorney’s depression and “feelings of hopelessness,” rendering her “too incapacitated to file a timely appeal of the Fee Order.” The district court found K.G.’s arguments persuasive and granted relief from judgment on May 20, 2014. After receiving such relief, K.G. again moved for attorneys’ fees. This time, K.G. sought a total of $282,038.25, representing $221,971.35 for work performed by the original attorney and $60,066.90 for work performed by the new attorney.
The district court went on to grant in part K.G.’s renewed motion for attorney’s fees, mandating that the School District pay $174,803.65 in fees and costs: the court awarded $126,657.25 for work performed by KG.’s original attorney and $48,146.40 for work performed by KG.’s new attorney. The School District timely appeals the district court’s order.[1]
II
The School District contends that the district court erred in granting K.G. relief from its original judgment denying attorneys’ fees. We review a district court’s grant of relief under Federal Rule of Civil Procedure 60(b) for abuse of discretion. Cal. Dep’t of Soc. Servs. v. Leavitt, 523 F.3d 1025, 1031 (9th Cir. 2008).
*1091 A
The School District first argues that the district court did not apply the correct legal rule in evaluating whether to .grant relief. Rule 60(b)(1) provides that a district court “may relieve a party ... from a final judgment” in cases of “mistake, inadvertence, surprise, or excusable neglect.” To determine whether a party’s failure to meet a deadline constitutes “excusable neglect” under Rule 60(b)(1), a court “must apply a four-factor equitable test, examining: (1) the danger of prejudice to the opposing party; (2) the length of the delay and its potential impact on the proceedings; (3) the reason for the delay; and (4) whether the movant acted in good faith.” Ahanchian v. Xenon Pictures, Inc., 624 F.3d 1253, 1261 (9th Cir. 2010).
The district court began its analysis by rejecting the District’s contention that it would be prejudiced by a grant of relief. The District argued that it had fixed its budget under the assumption that an order for attorneys’ fees was off the table and had relied on the district court’s denial of fees in negotiating settlements in other matters. The district court found both claims unpersuasive. As to the remaining relevant factors, the district court determined that K.G.’s delay in pursuing Rule 60(b) relief was understandable in light of the original attorney’s poor mental and physical health. The district court thus “identified and applied the correct legal rule,” United States. v. Hinkson, 585 F.3d 1247, 1263 (9th Cir. 2009), and applied it to the facts at hand, weighing each element before arriving at its decision to grant relief.
B
The School District counters that even if the district court applied the correct legal rule, the court’s factual findings were flawed — specifically, that the district court “gave undue weight to the Declaration of Dr. Lorna Swartz” and other evidence outlining the attorney’s psychological difficulties. It cites evidence in the record demonstrating that K.G.’s original attorney continued to practice law during the period when Swartz asserted that she was incapable of doing so. The School District notes that the attorney communicated with opposing counsel and, when she stated that she did not oppose a proposed judgment sent to her by the State, explained via email that she had “been out of the office in marathon [individual education program team] meetings.” Such facts, according to the School District, undermine K.G.’s claim that the original attorney was “incapacitated.”
The district court noted such criticisms but nevertheless found Dr. Swartz’s declaration persuasive:
While the Court acknowledges that this contemporaneous evidence displays some ability to continue her practice, the Court still concludes that Swartz’s evidence and [the attorney’s] own declaration confirm that her depression, and in particular her feelings of hopelessness in regard[] to the fee motion, were so severe that her neglect in failing to appeal was excusable.
Although one might reasonably disagree as to whether the attorney was truly incapable of performing her job, the district court’s decision to grant relief was not “illogical, implausible, or without support in inferences that may be drawn from the facts in the record.” Hinkson, 585 F.3d at 1263.
Ill
The School District next argues that the district court abused its discretion in granting K.G.’s motion for attorney’s fees. IDEA provides that “the court, in its *1092 discretion, may award reasonable attorneys’ fees as part of the costs ... to a prevailing party who is the parent of a child with a disability.” 20 U.S.C. § 1415(i)(3)(B)(i)(I). Thus, in reviewing the district court’s fee award, we must confirm that (1) K.G. was in fact a “prevailing party” and (2) the fees were reasonable. Aguirre v. La. Unified Sch. Dist., 461 F.3d 1114, 1117 (9th Cir. 2006).
A
Under the Supreme Court’s “ ‘generous formulation’ of the term, ‘plaintiffs may be considered “prevailing parties” for attorney’s fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.’ ” Farrar v. Hobby, 506 U.S. 103, 109, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992) (quoting Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)); see T.B. ex rel. Brenneise v. San Diego Unified Sch. Dist., 806 F.3d 451, 483 (9th Cir. 2015) (applying the Farrar definition of “prevailing party” to IDEA attorneys’ fees provision). “The touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute.” Tex. State Teachers Ass’n v. Garland Indep. Sch. Dist., 489 U.S. 782, 792-93, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989).
In initiating the IDEA action in California’s Office of Administrative Hearings, K.G. requested that “the ALJ deem one of the [three agencies] responsible to provide him FAPE.” KG.’s prayer was answered in full when the ALJ designated the School District as the responsible agency. The district court similarly granted K.G.’s requested relief, originally by designating the State as the responsible agency, then by ordering the District to pay the bill following our reversal. See Irvine Unified Sch. Dist., 506 Fed.Appx. at 550. K.G. thus achieved the “benefit [he] sought in bringing the suit.” Parents of Student W. v. Puyallup Sch. Dist., 31 F.3d 1489, 1498 (9th Cir. 1994). By receiving relief on the merits, K.G. “met that minimum condition for prevailing party status.” Farrar, 506 U.S. at 116, 113 S.Ct. 566 (O’Connor, J., concurring) (“One dollar is not exactly a bonanza, but it constitutes relief on the merits.”).
The School District nevertheless suggests that K.G. could not have benefitted from the litigation because K.G. graduated with a high school diploma months before the district court decided the case. It cites Farrar v. Hobby, 506 U.S. 103, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992), which in turn relies heavily on Rhodes v. Stewart, 488 U.S. 1, 109 S.Ct. 202, 102 L.Ed.2d 1 (1988) (per curiam). In Rhodes, two inmates sued prison officials after they were denied the right to subscribe to a magazine. Though the prisoners successfully won a declaratory judgment granting them the right to subscribe to the magazine, the Supreme Court held that they were not “prevailing parties” for purposes of assigning attorneys’ fees. Rhodes, 488 U.S. at 2, 109 S.Ct. 202. The Court reasoned that “a modification of prison policies ... could not in any way have benefited [sic] either plaintiff, one of whom was dead and the other released before the District Court entered its order.” Id. at 4, 109 S.Ct. 202. The prisoners could not be considered “prevailing parties” for purposes of assigning statutory attorneys’ fees because the judgment could not alter the behavior of the defendant towards them. Just like the prisoners in Rhodes, the District argues that K.G. received no real benefit from the district court’s order because he was no *1093 longer a student when judgement was entered.
In elucidating the contours of its “prevailing party” definition, however, the Supreme Court in Farrar explained that the inmates in Rhodes could not be said to have “prevailed” when their litigation culminated merely in a declaratory judgment: “Whatever ‘modification of prison policies’ the declaratory judgment might have effected ‘could not in any way have benefit-ted either plaintiff, one of whom was dead and the other released.’ ” Farrar, 506 U.S. at 110, 113 S.Ct. 566 (quoting Rhodes, 488 U.S. at 4, 109 S.Ct. 202). A party receives a meaningful benefit “if, and only if, [the judgment] affects the behavior of’ the opposing party towards it. Rhodes, 488 U.S. at 4, 109 S.Ct. 202. Because the plaintiffs were no longer in prison custody, they could not benefit from the particular relief they had won.
The posture of this case differs significantly from that of Rhodes. Unlike the prisoners in Rhodes, K.G. secured a judicially enforceable judgment — the ALJ’s decision — when it still mattered. See T.B. ex rel. Brenneise, 806 F.8d at 483 (“It is true that the educational relationship between T.B. and the district ended in 2008 when the Brenneises left San Diego. But they had still earned relief before they left in the form of an enforceable judgment.”). The administrative record demonstrates that for a brief period at least some threat of discharge from school hung over KG.’s head as a result of the funding dispute. A ruling from an ALJ definitively holding one agency responsible was the most effective means of eliminating such risk. K.G. secured this initial judgment on November 30, 2009, well before high school graduation ceremonies occurred in April of the following year. At that point, KG.’s original counsel had billed 60.6 hours of her time to this case.
Litigation could have ceased with the decision of the ALJ. Instead, it was the School District that kept the meter running when it filed a complaint in district court. One could not reasonably expect K.G., who was still enrolled in school when the District named the student as a defendant in federal court, to refrain from expending resources as the case progressed. And it would make little sense to render a party wholly ineligible for an award of fees incurred in defending its victory, especially during the period when K.G. was still enrolled.
B
A party whose “success on a legal claim can be characterized as purely technical or de minimis” is not entitled to fees. Parents of Student W., 31 F.3d at 1498. The School District argues that K.G., even if properly termed a “prevailing party,” obtained only limited success because it was effectively a forgone conclusion that some agency would fund K.G.’s education. In that sense, the District contends, K.G.’s legal victory amounted to nothing more than the designation as to which agency would be responsible for providing the relief he had already received. And, as the District notes, most of the litigation preceding this “victory” occurred after the threat of discharge had-been essentially eliminated because of the County’s willingness to fund K.G.’s FAPE temporarily.
Contrary to the District’s suggestion, however, K.G.’s victory in this case cannot be dismissed as “de minimis.” Cf. Farrar, 506 U.S. at 115, 113 S.Ct. 566 (“When a plaintiff recovers only nominal damages ... the only reasonable fee is usually no fee at all.”). K.G. received the requested relief in' full by forcing an agency to take responsibility for funding the FAPE. Such a victory was significant because it eliminated any residual risk that K.G. could be discharged from school. K.G. argued the case before the ALJ in order to *1094 guarantee that a California government agency would pay the cost of the FAPE: the ALJ’s decision notes that the sole issue of the administrative proceedings was “Which educational agency is responsible for providing [K.G.] with a [FAPE]?” Securing an enforceable judgment holding one such agency responsible for that FAPE, and later defending that victory in a civil action in federal court, certainly constitutes success in a “significant issue” of litigation. Parents of Student W, 31 F.3d at 1498.[2]
K.G. qualified as a prevailing party under IDEA, and this victory was not trivial or merely technical. An award of some amount of fees incurred in achieving this end was therefore justified.
C
That, however, does not end our inquiry. Even when a party is entitled to some fees, the amount awarded must be “reasonable.” 20 U.S.C. § 1415(i)(3)(B)(i). The School District argues that the fee award was unreasonably high given that much of the work performed on K.G.’s behalf took place after graduation when K.G. was no longer vulnerable. Before graduating, K.G. had at least some skin in the game. Although the threat of discharge may have been remote given the County’s willingness to fund KG.’s FAPE temporarily, it remained reasonable for K.G. to continue to pursue a more definitive resolution. This changed in April 2010, of course, when the risk of discharge evaporated as a result of KG.’s graduation. With a diploma in hand, K.G. moved on to the next phase of life, having been provided with all that IDEA guaranteed him. Yet the litigation to which K.G. was a party continued.
While K.G.’s original attorney reported spending only 60.6 hours advocating on behalf of K.G. during state administrative proceedings, she purportedly dedicated 134.5 hours litigating before the district court in support of holding the State responsible for the FAPE rather than the District. Counsel’s zealous advocacy on behalf of her long-graduated client continued before this court — she reported spending 206.5 hours on an appeal that did not even commence until roughly ten months after KG.’s graduation.
Although the district court wisely reduced requested fees in its final award, we question the need for any significant advocacy on behalf of K.G. following the student’s high school graduation. If the vagaries of litigation demanded KG.’s continued nominal presence as a party, counsel certainly deserves to be compensated for advocacy undertaken on K.G.’s behalf (and in pursuit of fees derived from such work). But the need for such work may have been minimal given what appears to be an utter lack of risk borne by K.G. following graduation. Once a student receives all the statutory benefits guaranteed by IDEA and no longer faces even a nominal risk that those benefits might be taken away, only exceptional circumstances can justify an ever-lengthening billing invoice. A finding that K.G. might end up liable for bills already paid, or the possibility that his diploma might be retroactively revoked, for instance, would certainly explain the need for hundreds of hours of advocacy after his graduation in 2010. But IDEA is not “a relief Act for lawyers.” Farrar, 506 U.S. at 122, 113 S.Ct. 566 (O’Connor, J., concurring) (quoting Riverside v. Rivera, 477 U.S. 561, 588, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986) (Rehnquist, J., dissenting)). Here, the bur *1095 den is on KG. to demonstrate why his continued participation in this litigation was necessary after he received everything to which he was entitled.
It may well be that the district court took into account the forgoing considerations in reducing the fees originally requested, but it is not clear from the court’s order awarding fees. On remand, the district court should review the work undertaken following KG.’s graduation to determine whether it truly furthered KG.’s interests. Further inquiry into why KG. did not seek to remove himself from the proceedings following his graduation would be appropriate. Legal work the district court identifies as having been unmoored from genuine advocacy in furtherance of KG.’s interests may not be rewarded with fees. The district court must explain why, specifically, any given percentage reductions are proper and how such fees are appropriately allocated to work performed before and after K.G.’s graduation. See Barnard v. Theobald, 721 F.3d 1069, 1077 (9th Cir. 2013) (“[W]hile the district judge explained why he thought the award was excessive, he failed to explain why he thought that a 40 percent reduction would be an appropriate remedy.”).
IV
We affirm the district court’s grant of relief from judgment, but we vacate the fee award. On remand, the district court shall determine whether the hours billed following KG.’s graduation were truly the result of advocacy reasonably calculated to advance KG.’s interests as opposed to those of KG.’s lawyers, and the district court shall adjust the fee award accordingly with appropriate explanation.[3]
The parties shall bear their own costs incurred during this appeal.
AFFIRMED in part, VACATED in part, and REMANDED.

. K.G. filed a cross-appeal, No. 14-56524, challenging the district court’s decision to reduce appellate fees sought by the original attorney by more than 50%. Such appeal has since been dismissed by stipulation of the parties.

. K.G.'s motion for us to take judicial notice of the district court’s order awarding fees in A.S., as well as the docket for this case, filed September 22, 2015, is GRANTED.

. The Motion for Leave to File Brief of Amici Curiae California School Boards Association Education Legal Alliance & National School Boards Association in Support of Irvine Unified School District and Reversal of the District Court's Decision, filed March 25, 2015, is GRANTED.